**United States District Court**
For the Northern District of California

\*E-FILED: May 22, 2013\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA For the Use of TECHNO COATINGS, INC., a California corporation,<br><br>　　　　Plaintiff,<br>　v.<br><br>AMEC ENVIRONMENT AND INFRASTRUCTURE, INC.; a Nevada corporation formerly known as AMEC EARTH & ENVIRONMENTAL, INC.; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation,<br><br>　　　　Defendants.<br>――――――――――――――――――――/<br>AMEC ENVIRONMENTAL AND INFRASTRUCTURE, INC., a Nevada corporation,<br><br>　　　　Counterclaimant,<br>　v.<br><br>TECHNO COATINGS, INC., a California corporation,<br><br>　　　　Counterdefendant.<br>――――――――――――――――――――/<br>AMEC ENVIRONMENT AND INFRASTRUCTURE, INC., a Nevada corporation,<br><br>　　　　Third Party Plaintiff,<br>　v. | No. C12-04044 HRL<br><br>**ORDER GRANTING THIRD PARTY DEFENDANT NCM CONTRACTING GROUP'S MOTION TO DISMISS**<br><br>[Re: Docket No. 38] |

1  NCM CONTRACTING GROUP, LP, a
2  Delaware limited partnership,
3          Third Party Defendant.
                                                /

Plaintiff Techno Coatings, Inc. (TCI) sues under the Miller Act, 40 U.S.C. §§ 3131-3134 for alleged breaches of a subcontract in connection with a construction project at Moffett Field, Hangar 1. Among other things, TCI alleges that defendant AMEC Environment and Infrastructure, Inc. (AMEC), the general contractor on the project, failed to provide proper scaffolding.[1] AMEC filed a counterclaim, asserting that TCI breached the subcontract and owes AMEC money.

Pursuant to a stipulation with TCI, and with leave of court, AMEC filed a third-party complaint against NCM Contracting Group, L.P. (NCM), a subcontractor who reportedly was responsible for providing scaffolding for the Hangar 1 project. If TCI prevails on its claim that AMEC failed to provide proper scaffolding, then AMEC says that the fault lies with NCM. AMEC's third-party complaint against NCM asserts claims for indemnity, declaratory relief, and breach of contract.

NCM now moves to dismiss AMEC's complaint on the ground that a forum selection clause in its contract with AMEC requires this case to be litigated in Pennsylvania.[2] AMEC opposes the motion. Upon consideration of the moving and responding papers, as well as the arguments of counsel, the court grants the motion.[3]

---

[1] TCI also claims that AMEC failed to timely process forms, delaying TCI's access to the work site; structured the project in a manner that caused TCI to perform its work in piecemeal fashion and out of sequence; failed to provide access to work Zone 1B, resulting in inefficient down time; failed to provide the required lighting and electrical outlets and removed the installed electrical outlets; failed to provide elevators and stairways or ladders for workers to move quickly from one deck level to another; failed to provide worker hoists; and failed to collect contaminants and instead let them collect on the floor.

[2] TCI's and AMEC's stipulated request for leave to permit AMEC to file a third-party complaint against NCM did not mention that the AMEC-NCM contract contained a forum selection clause.

[3] All parties have expressly consented that proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); FED. R. CIV. P. 73.

2

## DISCUSSION

A motion to enforce a forum selection clause is treated as a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). In such motions, the pleadings need not be accepted as true, and the court may consider facts outside the pleadings. Id. Where there are contested facts bearing on the impact of a forum selection clause, "the trial court is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

The AMEC-NCM contract, which was drafted by AMEC, provides, in relevant part:

> 39. Governing Law, Venue, and Severability
>
> This Agreement is to be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. Any action instituted for the enforcement of this Agreement shall be resolved only in the federal or state courts of Pennsylvania.

(Dkt. No. 38-1, Jinkins Decl., Ex. A at 16).

"Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)). There are three reasons that would make enforcement of a forum selection clause unreasonable: "(1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'" Murphy, 362 F.3d at 1140 (quoting Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998)). The party challenging the clause bears a heavy burden of proof. Id. (citing The Bremen, 407 U.S. at 15, 92 S. Ct. 1907).

As the drafter of both the TCI and NCM agreements, AMEC does not claim that the inclusion of the forum selection clause in question was the product of fraud or overreaching.

1 Nor has it made a showing under the other The Bremen factors. Pointing out that its contract
2 with TCI requires disputes to be litigated in California, AMEC instead argues that the forum
3 selection clause in the NCM contract should not be enforced in view of third-party practice
4 under Fed. R. Civ. P. 14 and the ancillary venue doctrine. That doctrine essentially provides
5 that if venue is proper for the original action, then there is no need for an independent basis of
6 venue for third-party claims. In its papers, AMEC cited several cases concerning the ancillary
7 venue doctrine, none of which involved a forum selection clause. And, courts have frequently
8 enforced third-party defendants' motions to enforce such clauses, notwithstanding the ancillary
9 venue doctrine or Fed. R. Civ. P. 14 third party practice. See, e.g. Zurich Ins. Co. v. Prime,
10 Inc., 419 F. Supp.2d 384 (S.D.N.Y. 2005); Kennebec Tel. Co., Inc. v. Sprint Communications
11 Co. Ltd. Partnership, 477 F. Supp.2d 1058 (D. S.D. 2007); Laserdynamics, Inc. v. Acer
12 America Corp., 209 F.R.D. 388 (S.D. Tex. 2002).

13 At oral argument, AMEC argued that the existence of a forum selection clause is but one
14 factor to be considered in deciding the instant motion, citing Stewart Organization, Inc. v. Ricoh
15 Corp., 487 U.S. 22, 108 S. Ct. 2239 (1988).[4] Stewart holds that federal law, not state law,
16 governs a district court's decision to grant a motion to transfer a case to a venue provided in a
17 forum selection clause. Id. at 32. And, while it is true that a forum selection clause in and of
18 itself is not dispositive of a motion to transfer venue, "[t]he presence of a forum-selection clause
19 such as the parties entered into in this case will be a significant factor that figures centrally in
20 the district court's calculus." Id. at 29. Of particular significance here is that AMEC drafted
21 the contract containing the forum selection clause at issue; and, the AMEC-NCM agreement
22 was entered into freely, and without coercion, by two sophisticated commercial entities, which
23 presumably were represented by counsel. See Laserdynamics, Inc., 209 F.R.D. at 391
24 (concluding that fairness mandated enforcement of the forum selection clause at issue where the
25 contract was entered into freely by sophisticated global business entities).

26 AMEC nevertheless contends that litigating here will be more convenient and efficient
27 than litigating in Pennsylvania because the construction work was performed here, and various

---

[4] AMEC did not cite Stewart in its moving papers.

4

witnesses, companies, and records are also located here. But, the sheer number of witnesses who may be located here is not dispositive. AMEC does not say what documents or witnesses will be required to prove its claims against NCM. Nor does it say what the identified witnesses' testimony will be and why that testimony is relevant and necessary.[5] NCM believes that witnesses pertinent to any litigation brought by AMEC will not be California laborers, but project mangers and expert witnesses charged with proving delays and liability through analysis of project records and schedules that are not physically stored on site. Additionally, NCM asserts (and AMEC does not deny) that both companies are national and multinational companies with personnel that regularly travel around the country and the world. In any event, "[t]he Supreme Court has distinguished the inconvenience necessary to establish unreasonableness of a forum selection clause and the balancing of convenience test appropriate in a change of venue or *forum non conveniens* motion." Pelleport Investors, Inc. v. Budco Quality Theatres, 741 F.2d 273, 281 (9th Cir. 1984). There is no suggestion by AMEC that proceeding with its claims against NCM in Pennsylvania would be so difficult or inconvenient that AMEC would be denied a meaningful day in court.

Nor has AMEC persuasively demonstrated that proceeding in Pennsylvania will require complete duplication of efforts or a likelihood of inconsistent results. AMEC seeks indemnity from NCM. Typically, such relief is not sought until after there has been a finding of liability to the plaintiff. Assuming, hypothetically, that TCI prevails against AMEC on the scaffolding claims and obtains a judgment to that effect, AMEC will be free to pursue claims against NCM on the ground that NCM's conduct led to the entry of that judgment. The issues in any such action will likely concern whether the judgment is the result of NCM's alleged breach of its subcontract or, as NCM seems to contend, the result of AMEC's alleged failure to properly manage and coordinate the various subcontractors on the Hangar 1 project. There may be some overlap with the instant litigation. But, as noted above, all indications are that AMEC freely entered into the pertinent subcontracts, agreeing to litigate

---

[5] Indeed, AMEC identifies one witness who apparently performed "waste accumulation" services at the project. (See Richter Decl. ¶ 12; Schulz Decl. ¶ 8). It is not clear what, if anything, that has to do with the scaffolding issue.

5

disputes with TCI here and to litigate disputes with NCM in Pennsylvania. On the record presented, AMEC has not carried its heavy burden of establishing that the NCM forum selection clause is unreasonable. Accordingly, NCM's motion to dismiss for improper venue is granted without prejudice to AMEC to bring its claims in Pennsylvania.[6]

SO ORDERED.

Dated: May 22, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[6] NCM notes that the Pennsylvania courts will not be unfamiliar with the Hangar 1 project because another subcontractor, CL Industrial Coatings (i.e., TCI's replacement on the project) has also sued AMEC in Pennsylvania in connection with the project.

5:12-cv-04044-HRL Notice has been electronically mailed to:

David Drew Lyle Brandon     dbrandon@mpplaw.com

Douglas Clyde Purdy     dpurdy@mpplaw.com

John Richard Welch     welch@carneylaw.com, jensen@carneylaw.com

Martha Eager     eager@mmlawyers.com

Patrick John Duffy , III     duffy@mmlawyers.com, raspa@mmlawyers.com

Raina Laurie Richter     rrichter@mpplaw.com, mkelley@mpplaw.com

Steven Michael Morger     smorger@wendel.com, smorger@comcast.net, tgan@wendel.com