**United States District Court**
For the Northern District of California

1

2          *E-FILED:  May 22, 2013*

3

4

5

6

7                          NOT FOR CITATION

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

| | |
|---|---|
| 11  UNITED STATES OF AMERICA For the Use of TECHNO COATINGS, INC., a California corporation, | No. C12-04044 HRL |
| 12 | **ORDER GRANTING THIRD PARTY DEFENDANT NCM CONTRACTING GROUP'S MOTION TO DISMISS** |
| 13          Plaintiff, | |
| 14     v. | |
| 15  AMEC ENVIRONMENT AND INFRASTRUCTURE, INC.; a Nevada corporation formerly known as AMEC EARTH & ENVIRONMENTAL, INC.; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation, | **[Re:  Docket No. 38]** |
| 19          Defendants. | |
| 20 _____/ | |
| 21  AMEC ENVIRONMENTAL AND INFRASTRUCTURE, INC., a Nevada corporation, | |
| 22 | |
| 23          Counterclaimant, | |
|      v. | |
| 24  TECHNO COATINGS, INC., a California corporation, | |
| 25 | |
| 26          Counterdefendant. | |
| _____/ | |
| 27  AMEC ENVIRONMENT AND INFRASTRUCTURE, INC., a Nevada corporation, | |
| 28 | |
|          Third Party Plaintiff, | |
|      v. | |

1    NCM CONTRACTING GROUP, LP, a
     Delaware limited partnership,
2
                       Third Party Defendant.
3    _____/

4

5          Plaintiff Techno Coatings, Inc. (TCI) sues under the Miller Act, 40 U.S.C. §§ 3131-3134

6    for alleged breaches of a subcontract in connection with a construction project at Moffett Field,

7    Hangar 1.  Among other things, TCI alleges that defendant AMEC Environment and

8    Infrastructure, Inc. (AMEC), the general contractor on the project, failed to provide proper

9    scaffolding.[1]  AMEC filed a counterclaim, asserting that TCI breached the subcontract and owes

10   AMEC money.

11         Pursuant to a stipulation with TCI, and with leave of court, AMEC filed a third-party

12   complaint against NCM Contracting Group, L.P. (NCM), a subcontractor who reportedly was

13   responsible for providing scaffolding for the Hangar 1 project.  If TCI prevails on its claim that

14   AMEC failed to provide proper scaffolding, then AMEC says that the fault lies with NCM.

15   AMEC's third-party complaint against NCM asserts claims for indemnity, declaratory relief,

16   and breach of contract.

17         NCM now moves to dismiss AMEC's complaint on the ground that a forum selection

18   clause in its contract with AMEC requires this case to be litigated in Pennsylvania.[2]  AMEC

19   opposes the motion.  Upon consideration of the moving and responding papers, as well as the

20   arguments of counsel, the court grants the motion.[3]

21   _____

22         [1]     TCI also claims that AMEC failed to timely process forms, delaying TCI's
     access to the work site; structured the project in a manner that caused TCI to perform its
23   work in piecemeal fashion and out of sequence; failed to provide access to work Zone 1B,
     resulting in inefficient down time; failed to provide the required lighting and electrical
24   outlets and removed the installed electrical outlets; failed to provide elevators and stairways
     or ladders for workers to move quickly from one deck level to another; failed to provide
25   worker hoists; and failed to collect contaminants and instead let them collect on the floor.

26         [2]     TCI's and AMEC's stipulated request for leave to permit AMEC to file a
     third-party complaint against NCM did not mention that the AMEC-NCM contract contained
27   a forum selection clause.

28         [3]     All parties have expressly consented that proceedings in this matter may be
     heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); FED. R. CIV. P. 73.

United States District Court
For the Northern District of California

2

United States District Court

For the Northern District of California

DISCUSSION

A motion to enforce a forum selection clause is treated as a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue.  Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  In such motions, the pleadings need not be accepted as true, and the court may consider facts outside the pleadings.  Id.  Where there are contested facts bearing on the impact of a forum selection clause, "the trial court is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

The AMEC-NCM contract, which was drafted by AMEC, provides, in relevant part:

39.    Governing Law, Venue, and Severability

This Agreement is to be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.  Any action instituted for the enforcement of this Agreement shall be resolved only in the federal or state courts of Pennsylvania.

(Dkt. No. 38-1, Jinkins Decl., Ex. A at 16).

"Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'"  Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)).  There are three reasons that would make enforcement of a forum selection clause unreasonable:  "(1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'"  Murphy, 362 F.3d at 1140 (quoting Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998)).  The party challenging the clause bears a heavy burden of proof.  Id. (citing The Bremen, 407 U.S. at 15, 92 S. Ct. 1907).

As the drafter of both the TCI and NCM agreements, AMEC does not claim that the inclusion of the forum selection clause in question was the product of fraud or overreaching.

United States District Court

For the Northern District of California

Nor has it made a showing under the other The Bremen factors.  Pointing out that its contract with TCI requires disputes to be litigated in California, AMEC instead argues that the forum selection clause in the NCM contract should not be enforced in view of third-party practice under Fed. R. Civ. P. 14 and the ancillary venue doctrine.  That doctrine essentially provides that if venue is proper for the original action, then there is no need for an independent basis of venue for third-party claims.  In its papers, AMEC cited several cases concerning the ancillary venue doctrine, none of which involved a forum selection clause.  And, courts have frequently enforced third-party defendants' motions to enforce such clauses, notwithstanding the ancillary venue doctrine or Fed. R. Civ. P. 14 third party practice.  See, e.g. Zurich Ins. Co. v. Prime, Inc., 419 F. Supp.2d 384 (S.D.N.Y. 2005); Kennebec Tel. Co., Inc. v. Sprint Communications Co. Ltd. Partnership, 477 F. Supp.2d 1058 (D. S.D. 2007); Laserdynamics, Inc. v. Acer America Corp., 209 F.R.D. 388 (S.D. Tex. 2002).

At oral argument, AMEC argued that the existence of a forum selection clause is but one factor to be considered in deciding the instant motion, citing Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 108 S. Ct. 2239 (1988).[4]  Stewart holds that federal law, not state law, governs a district court's decision to grant a motion to transfer a case to a venue provided in a forum selection clause.  Id. at 32.  And, while it is true that a forum selection clause in and of itself is not dispositive of a motion to transfer venue, "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."  Id. at 29.  Of particular significance here is that AMEC drafted the contract containing the forum selection clause at issue; and, the AMEC-NCM agreement was entered into freely, and without coercion, by two sophisticated commercial entities, which presumably were represented by counsel.  See Laserdynamics, Inc., 209 F.R.D. at 391 (concluding that fairness mandated enforcement of the forum selection clause at issue where the contract was entered into freely by sophisticated global business entities).

AMEC nevertheless contends that litigating here will be more convenient and efficient than litigating in Pennsylvania because the construction work was performed here, and various

---

[4]     AMEC did not cite Stewart in its moving papers.

United States District Court
For the Northern District of California

1    witnesses, companies, and records are also located here.  But, the sheer number of witnesses

2    who may be located here is not dispositive.  AMEC does not say what documents or witnesses

3    will be required to prove its claims against NCM.  Nor does it say what the identified witnesses'

4    testimony will be and why that testimony is relevant and necessary.[5]  NCM believes that

5    witnesses pertinent to any litigation brought by AMEC will not be California laborers, but

6    project mangers and expert witnesses charged with proving delays and liability through analysis

7    of project records and schedules that are not physically stored on site.  Additionally, NCM

8    asserts (and AMEC does not deny) that both companies are national and multinational

9    companies with personnel that regularly travel around the country and the world.  In any event,

10   "[t]he Supreme Court has distinguished the inconvenience necessary to establish

11   unreasonableness of a forum selection clause and the balancing of convenience test appropriate

12   in a change of venue or *forum non conveniens* motion."  Pelleport Investors, Inc. v. Budco

13   Quality Theatres, 741 F.2d 273, 281 (9th Cir. 1984).  There is no suggestion by AMEC that

14   proceeding with its claims against NCM in Pennsylvania would be so difficult or inconvenient

15   that AMEC would be denied a meaningful day in court.

16          Nor has AMEC persuasively demonstrated that proceeding in Pennsylvania will require

17   complete duplication of efforts or a likelihood of inconsistent results.  AMEC seeks indemnity

18   from NCM.  Typically, such relief is not sought until after there has been a finding of liability to

19   the plaintiff.  Assuming, hypothetically, that TCI prevails against AMEC on the scaffolding

20   claims and obtains a judgment to that effect, AMEC will be free to pursue claims against NCM

21   on the ground that NCM's conduct led to the entry of that judgment.  The issues in any such

22   action will likely concern whether the judgment is the result of NCM's alleged breach of its

23   subcontract or, as NCM seems to contend, the result of AMEC's alleged failure to properly

24   manage and coordinate the various subcontractors on the Hangar 1 project.  There may be some

25   overlap with the instant litigation.  But, as noted above, all indications are that AMEC freely

26   entered into the pertinent subcontracts, agreeing to litigate

27   _____

28       [5]     Indeed, AMEC identifies one witness who apparently performed "waste
     accumulation" services at the project.  (See Richter Decl. ¶ 12; Schulz Decl. ¶ 8).  It is not
     clear what, if anything, that has to do with the scaffolding issue.

1   disputes with TCI here and to litigate disputes with NCM in Pennsylvania.  On the record

2   presented, AMEC has not carried its heavy burden of establishing that the NCM forum selection

3   clause is unreasonable.  Accordingly, NCM's motion to dismiss for improper venue is granted

4   without prejudice to AMEC to bring its claims in Pennsylvania.[6]

5          SO ORDERED.

6   Dated: May 22, 2013

7

8   _____
    HOWARD R. LLOYD
    UNITED STATES MAGISTRATE JUDGE

9

**United States District Court**
For the Northern District of California

---

27      [6]      NCM notes that the Pennsylvania courts will not be unfamiliar with the
28   Hangar 1 project because another subcontractor, CL Industrial Coatings (i.e., TCI's
     replacement on the project) has also sued AMEC in Pennsylvania in connection with the
     project.

6

United States District Court

For the Northern District of California

1  5:12-cv-04044-HRL Notice has been electronically mailed to:

2  David Drew Lyle Brandon     dbrandon@mpplaw.com

3  Douglas Clyde Purdy     dpurdy@mpplaw.com

4  John Richard Welch     welch@carneylaw.com, jensen@carneylaw.com

5  Martha Eager     eager@mmlawyers.com

6  Patrick John Duffy , III     duffy@mmlawyers.com, raspa@mmlawyers.com

7  Raina Laurie Richter     rrichter@mpplaw.com, mkelley@mpplaw.com

8  Steven Michael Morger     smorger@wendel.com, smorger@comcast.net, tgan@wendel.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28