1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA for the use of TECHNO COATINGS, INC., a California corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>AMEC ENVIRONMENT & INFRASTRUCTURE, INC., a Nevada corporation formerly known as AMEC EARTH & ENVIRONMENTAL, INC.; FIDELITY AND DEPOSIT COMPANY OF MARYLAND; a Maryland corporation; and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA a Pennsylvania corporation,<br><br>        Defendants.<br><br>AMEC ENVIRONMENT & INFRASTRUCTURE, INC., a Nevada corporation,<br><br>        Counterclaimant,<br><br>        v.<br><br>TECHNO COATINGS, INC., a California corporation,<br><br>        Counterdefendant. | Case No.  5:12-cv-04044 HRL<br><br>**ORDER ON PARTIES' MOTIONS IN LIMINE**<br><br>[Re:   Dkt. Nos. 62-65, 70, 72, 73, 82-86] |
|---|---|

Upon consideration of the moving and responding papers, and based on the discussion held at the January 16, 2014 final pretrial conference, the court rules on the parties' respective motions in limine as follows:

**Plaintiff's Motions in Limine**

**Motion No. 1**

Plaintiff's motion to preclude defendant AMEC from offering evidence or testimony to prove that TCI delayed completion of the Hangar 1 project, and that AMEC incurred damages as a result, is DENIED. TCI has not managed to persuade that it is, in effect, entitled to judgment as a matter of law as to AMEC's claimed damages.

**Motion No. 2**

TCI moves to exclude the expert report and opinions of defense expert witness Ray Tombaugh, who was retained by AMEC to opine about surface preparation and painting application access issues. The court declines to preclude his testimony in its entirety. Given his experience in industrial painting methods, Tombaugh will be permitted to offer his opinions as to (1) surface preparation, (2) coating application, (3) inspection, and (4) the access normally required for each of these functions. Fed. R. Evid. 702.

Additionally, although the SSPC SP WJ-4 standard discussed by Tombaugh admittedly was not published during the period of TCI's work on the project, Tombaugh says that (1) SSPC SP WJ-4 was part of the SSPC SP-12/NACE No. 5 standard that was applicable to the project; and (2) SSPC SP WJ-4 resulted when the SSPC SP-12/NACE No. 5 was broken down in four standards. There is no indication in the record presented that anyone disputes that assertion. Accordingly, unless there is a showing that the SSPC SP WJ-4 standard otherwise did not apply to the project, Tombaugh will be permitted to offer opinions based on it.

However, Tombaugh will not be permitted to offer opinions about (1) scaffolding construction; (2) scaffolding safety; (3) whether the scaffolding, as constructed, complied with common practice expected on projects of comparable size and complexity or whether it complies with Scope of Work, section 5.0 of the AMEC-TCI subcontract; or (4) Cal-OSHA standards. Fed. R. Evid. 401, 403, 702.

**Motion No. 3**

TCI moves for an order precluding AMEC, as a matter of law, from recovering costs for repair, touch-up, or completion of work by AMEC or its subcontractors. The subcontract section 27 says that termination for convenience "shall not affect any rights of AMEC against Subcontractor then existing or which may thereafter accrue." TCI cites non-binding decisions for the proposition that where a contract has been terminated for convenience, the prime contractor is not entitled to recover damages for allegedly defective work. But here, TCI is also simultaneously challenging the propriety of AMEC's termination for convenience and seeking the damages it says it suffered as a result. Accordingly, this motion is DENIED.

**Motion No. 4**

TCI moves to exclude evidence relating to costs incurred by AMEC and CLIC to repair, correct, or perform touch-up work on painting done by TCI. The motion is GRANTED IN PART AND DENIED IN PART.[1] The court will not preclude AMEC from presenting its evidence altogether. However, AMEC will not be permitted to present evidence of costs incurred in (1) correcting trade damage to TCI's work that resulted when siding was removed; (2) painting areas that were covered by scaffold chains and that TCI did not have the ability to paint when the area was covered; or (3) work performed on the exterior steel surfaces.

**Motion No. 5**

TCI moves to exclude testimony by Michael Schulz, Mark Maniaci, Thomas Carr, Ryan Kanzleiter, Eric Reitter, Timothy Burkhard, Bradley Steck, Robert Smith, and Peter Wold as to whether TCI received the access required under the AMEC-TCI subcontract. The motion is deemed moot as to Thomas Carr. As for the remaining individuals, the motion is DENIED insofar as they will testify as percipient witnesses. They may not, however, testify as experts.

---

[1] The court rules on AMEC's evidentiary objections to the deposition testimony cited in support of TCI's motion as follows:
- Duffy Decl., Ex. 3, Claypool Depo. at 13:5-15:   Overruled.
- Duffy Decl., Ex. 3, Claypool Depo. at pp. 16-17:   Overruled.
- Duffy Decl., Ex. 8, Maniaci Depo. at p. 88:   Sustained. Fed. R. Evid. 602.
- Duffy Decl., Ex. 15, Schulz Depo. at pp. 177-180:   Sustained. Fed. R. Evid. 602.

**Motion No. 6**

TCI's motion to exclude Ryan Kanzleiter's deposition Exhibit No. 48 and any Kanzleiter testimony about it is GRANTED. Fed. R. Evid. 401, 403.

**Motion No. 7**

TCI's motion to exclude portions of the expert report and opinions of defense expert witness Alfred E. Schaer is GRANTED IN PART AND DENIED IN PART. The Cosselman declaration submitted in support of TCI's motion essentially is a belated rebuttal report, and TCI does not deny that it contains new opinions that were not disclosed in discovery. Accordingly, the court has not considered it. Fed. R. Civ. P. 37(c)(1); Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

Given his experience in construction management issues, Schaer will be permitted to testify about the same with respect to the project, including the alleged delays. Even so, some of Shaer's opinions are legal conclusions, and expert witnesses cannot give an opinion on an ultimate issue of law. United States v. Boulware, 558 F.3d 971, 975 (9th Cir. 2009). Schaer will not be permitted to offer his opinions as to what interpretation of the contract is reasonable or correct.

### Defendants' Motions in Limine

**Motion No. 1**

AMEC moves to "Preclude the Expert Testimony of Charles E. Whitehead re: Earned Contract Amount at the Time of Termination." TCI claims that it is owed $545,247.73 in additional unpaid contract earnings for work performed prior to termination. The motion is GRANTED on the grounds that the methodology Whitehead used to calculate this sum is inconsistent with the Price Schedule appended to and made part of the parties' agreement as Exhibit 4. Fed. R. Evid. 702. Although TCI now claims that the schedule is incorrect, there is no indication that it ever said so, i.e., until it claimed the sums in question for work performed prior to termination.

**Motion No. 2**

AMEC's motion to "Preclude Expert Testimony of Charles E. Whitehead re: Total Cost Method of Recovery and Admission of Exhibits 423 and 421 Attached to [his] Deposition" is

GRANTED. TCI claims $415,605 in additional costs as a result of the alleged lack of proper access. AMEC contends that Whitehead's calculations and methodology are unreliable and lack foundation. AMEC's objections to Whitehead's apparent methodology make sense to the court. Rather than explain, step by step, what Whitehead did, TCI points to his declaration, deposition testimony, and related exhibits that include dozens of pages of calculations.[2] Having considered all of those documents, and try as it might, the court does not see how TCI's claimed sums are supported by his "measured mile" analyses.

**Motion No. 3**

AMEC's motion to "Preclude the Expert Testimony of Charles E. Whitehead re: Lost Profits based on Wrongful Termination" is DENIED. TCI contends that AMEC terminated the subcontract in retaliation for TCI's refusal to pay one-third of the scaffolding costs (costs that TCI says were not its responsibility) and to waive its claims against AMEC. As such, TCI claims that AMEC's termination of the subcontract violated the implied covenant of good faith and fair dealing and that TCI is entitled to $766,382.33 in lost profits that it would have earned if the subcontract had not been terminated. AMEC contends that TCI's claims re the alleged wrongful termination are precluded because the subcontract expressly provides that AMEC could, in its sole discretion, terminate the parties' agreement for convenience. AMEC therefore seeks a ruling that the covenant of good faith and fair dealing does not, as a matter of law, restrict the exercise of AMEC's rights under the subcontract's Termination for Convenience clause.

Neither side has cited, and this court has not found, binding precedent that is squarely on point. Nevertheless, the California Supreme Court's decision in Carma Developers (California), Inc. v. Marathon Development California, Inc., is instructive. 2 Cal.4th 342, 826 P.2d 710 (1992). Carma concerned a commercial lease agreement that said that if the plaintiff-tenant found a potential sublessee and requested permission to sublease, then the defendant-landlord had the right to terminate the lease, pursue a lease with the proposed sublessee, and keep all profits for itself. In

---

[2] At the pretrial conference, TCI claimed that AMEC's motion did not identify all of Whitehead's calculations. At the court's direction, plaintiff later advised that Mr. Whitehead's calculations are found in the parties' proposed trial exhibits 41 and 421-429.

1  upholding the landlord's contractual rights, the court emphasized that the defendant's "termination
2  of the lease in order to claim for itself appreciated rental value of the premises was expressly
3  permitted by the lease and was clearly within the parties' reasonable expectations." Id. at 376, 826
4  P.2d at 729. In sum, the implied covenant restricts conduct that, "though not prohibited, is
5  nevertheless contrary to the contract's purposes and the parties' legitimate expectations." Id. at
6  374, 826 P.2d at 728.

Unlike Carma, the conduct alleged here---termination of the subcontract in retaliation for TCI's refusal to pay for part of the scaffolding costs and to waive its rights against AMEC---is not expressly bargained for in the parties' agreement. Instead, the contract provides that AMEC could terminate the agreement for its "convenience," a more amorphous standard. And, whether AMEC acted outside the parties' reasonable expectations when it terminated the subcontract is a factual issue for the jury to decide. Other courts have similarly applied Carma's principles. See, e.g., McNeary-Calloway v. JP Morgan Chase Bank, N.A., 863 F. Supp.2d 928, 956-58 (N.D. Cal. 2012) (collecting cases).

Third Story Music, Inc. v. Waits, 41 Cal. App.4th 798 (1995), cited by AMEC, does not change this court's conclusion. That case concerned a dispute between a plaintiff company that previously owned the rights to certain music and the defendant company that purchased the rights to manufacture, sell, market, distribute, and license it. Their contract contained an express clause giving defendant complete discretion "at its election" to refrain from doing any or all of those things, i.e., the very basis of the parties' agreement. Although the court found the express clause to be illusory, it concluded that application of the covenant of good faith and fair dealing was unnecessary because defendant agreed to make certain guaranteed minimum payments (no matter what marketing efforts were made), and thus defendant gave legally adequate consideration for the ability to exercise its discretion under the express clause however it chose. The instant case is inapposite because the court finds no comparable arrangement here.

**Motion No. 4**

Motion No. 4 to "Preclude the Expert Testimony of Charles E. Whitehead re: Escalated Costs not Calculated" is GRANTED. Fed. R. Civ. P. 37(c)(1); Yeti by Molly, Ltd. v. Deckers

1  Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

2  **Motion No. 5**

3  Motion No. 5 to "Preclude Reference to Other Litigations Involving this Project" is

4  GRANTED.  Fed. R. Evid. 401, 403.

5  **SO ORDERED**.

6  Dated:   January 31, 2014

7  _____

8  HOWARD R. LLOYD
   UNITED STATES MAGISTRATE JUDGE

7

1  5:12-cv-04044-HRL Notice has been electronically mailed to:

2  David Drew Lyle Brandon     dbrandon@mpplaw.com

3  Douglas Clyde Purdy     dpurdy@mpplaw.com

4  John Richard Welch     welch@carneylaw.com, jensen@carneylaw.com

5  Martha Eager     eager@mmlawyers.com

6  Patrick John Duffy , III     duffy@mmlawyers.com, raspa@mmlawyers.com

7  Raina Laurie Richter     rrichter@mpplaw.com, mkelley@mpplaw.com

8  Steven Michael Morger     smorger@wendel.com, smorger@comcast.net, tgan@wendel.com